In the Matter of William G.
MORELAND, Debtor.

EQUITY INVESTMENT
COMPANY, Movant,

v.

William G. MORELAND, Respondent.

Bankruptcy No. 2–90–02392.
Motion No. 2–90–0763M.

United States Bankruptcy Court,
D. Connecticut.

March 15, 1991.

Adam L. Bendett, Reiner & Reiner,
Farmington, Conn., for movant.

Theodore A. Lubinsky, Hartford, Conn.,
for debtor, respondent.

Gilbert L. Rosenbaum, Hartford, Conn.,
for Trustee.

## MEMORANDUM OF DECISION AND ORDER ON MOTIONS FOR RELIEF FROM STAY AND TO DISMISS CASE

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

### I.

The principal question presented in this proceeding is whether a chapter 13 plan providing for full payment of a matured home-mortgage debt reduced pre-petition to a judgment in state court is nonconfirmable because such plan allegedly would violate Bankruptcy Code § 1322(b)(2) which denies to a chapter 13 debtor the right to "modify" mortgages on "real property that is the debtor's principal residence." Equity Investment Company (Equity), the holder of the mortgage judgment, has raised this issue by way of separate motions for relief from stay and to dismiss the case. The parties have submitted the matter upon a stipulation of facts and briefs.[1] For rea-

---

1. The court has supplemented the stipulation of facts in Section II with information contained

sons that follow, I conclude that the debtor's proposed plan is confirmable on the issues briefed [2] and Equity's motions will be denied.

## II.

William G. Moreland, the debtor, on February 22, 1988 executed a promissory note for $45,000 in favor of Equity which provided for monthly interest-only payments at 18 percent per annum during the second year of the term, and for full maturity of the note on February 28, 1990. A second mortgage deed on the debtor's residence at 88 Simpson Street, Hartford, Connecticut secured the note. By complaint dated April 16, 1990, Equity started a mortgage foreclosure action, and the state court, on August 27, 1990, entered a judgment of foreclosure by sale, setting December 1, 1990 as the sale date. The debtor filed his chapter 13 petition on October 29, 1990 and his plan on November 19, 1990. The schedules attached to the petition disclose the debtor to be solvent, and the plan provides for the full payment plus interest of all debts, secured and unsecured, over a period of 60 months. Equity filed its motions on November 15 and 16, 1990.

## III.

### A.

■ Section 1322(b)(2) [3] provides that the limitation on modifying home mortgages applies when the real property that is the debtor's residence is the "only" security for the debt. The debtor initially claims that because Equity's mortgage extends to "all ... rents, royalties, ... oil and gas

in Equity's proof of claim, the briefs and the debtor's bankruptcy petition.

**2.** The papers filed by the parties do not discuss the appropriateness of the interest rates proposed by the debtor in his plan, and this ruling does not deal with that issue.

**3.** *§ 1322. Contents of plan.*

．　　．　　．　　．　　．

rights and profits, ... stock and all fixtures now or hereafter a part of the property," Equity's claim is not secured "only" by realty. This claim is meritless. The quoted language, generally found in mortgage deeds, does not create additional collateral for the claim distinct from that normally considered incidental to ownership of realty within the contemplation of § 1322(b)(2). *See, In re Hougland,* 93 B.R. 718, 720–21 (D.Ore.1988), *aff'd,* 886 F.2d 1182 (9th Cir. 1989); *In re Williams,* 109 B.R. 36, 39 (Bankr.E.D.N.Y.1989).

### B.

■ Equity contends that when a debt secured by the debtor's principal residence naturally matures before a chapter 13 petition is filed, any plan proposed short of immediate payment impermissibly modifies the secured party's rights contrary to § 1322(b)(2). A number of courts have adopted this position relying on the "plain meaning" rule. The leading case is *In re Seidel,* 752 F.2d 1382 (9th Cir.1985), which dealt with a second mortgage on a debtor's home calling for interest-only payments for a period of three years, at which time the principal came due in full. The debtor defaulted in payment of the principal and then filed a chapter 13 plan proposing to pay off the debt over a five-year period. The *Seidel* court first noted legislative history indicating an intention of § 1322(b)(2) to protect home lenders rather than home owners by prohibiting home owners from modifying debts wholly secured by home mortgages. The court then ruled:

> In our view, the plain meaning of the word "modification" in subsection b(2)

(b) subject to subsections (a) and (c) of this section, the plan may—

．　　．　　．　　．　　．

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence,....

must bar [the debtor's] plan. By postponing payment of the debt beyond the time originally contemplated by the parties to the contract, [the] plan clearly amounts to a unilateral "modification" of the original debt contract, as that word is ordinarily used.

752 F.2d at 1384. *Accord: In re Cooper,* 98 B.R. 294 (Bankr.W.D.Mich.1989); *In re Davis,* 91 B.R. 477 (Bankr.N.D.Ill.1988); *In re Sennhenn,* 80 B.R. 89 (Bankr.N.D.Ohio 1987); *Knez v. Bosteder (In re Bosteder),* 59 B.R. 878 (Bankr.S.D.Ohio 1986); *In re Miller,* 53 B.R. 100 (Bankr.S.D.Ohio 1985); *In re Hamilton,* 51 B.R. 550 (Bankr.M.D. Fla.1985); *In re Palazzolo,* 55 B.R. 17 (Bankr.E.D.N.Y.1985).

The opposing line of authority rejects the *Seidel* analysis and holds that a plan which during its term pays off a matured secured debt in full does not "modify" the rights of the secured party. *Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984) considered a defaulted second mortgage with a three-year term where the mortgagee had started a foreclosure action during the third year, and the debtor then filed a chapter 13 plan seeking to pay the now fully matured debt over a 36–month period. The court held that the debtor's plan did not "modify" the mortgagee's security interest, stating that:

> Section 1322(b) of the Code, construed in the light of its legislative history and context within Chapter 13 as a whole, evinces no legislative intent that a home-mortgagor debtor is barred ... from proposing ... that all past due or matured amounts secured by his home mortgage be paid during the term of his plan, if approved by the court....

730 F.2d at 237. *Accord: In re Braylock,* 120 B.R. 61 (Bankr.N.D.Miss.1990); *In re Rivera,* 108 B.R. 553 (Bankr.E.D.Pa.1989); *In re Bolden,* 101 B.R. 582 (Bankr.E.D.Mo. 1989); *In re Dochniak,* 96 B.R. 100 (Bankr. W.D.Ky.1988); *In re Larkins,* 50 B.R. 984 (W.D.Ky.1985). Other courts have added the argument that short term, high interest, non-home-purchase related loans secured by junior liens on debtors' residences were not intended by Congress to be covered by section 1322(b)(2): *Capitol Credit*

*Plan of Tenn., Inc. v. Shaffer,* 116 B.R. 60 (W.D.Va.1988), *appeal dismissed,* 912 F.2d 749 (1990); *In re Williams,* 109 B.R. 36 (Bankr.E.D.N.Y.1989); *In re Spader,* 66 B.R. 618 (W.D.Mo.1986). And still other authorities find, when a mortgage debt has been reduced to a judgment in a foreclosure proceeding, a merger occurs, and a foreclosure judgment lien is no longer a "security interest" subject to section 1322(b)(2)'s restriction. *In re Klein,* 106 B.R. 396 (Bankr.E.D.Pa.1989); *Jackson v. Citicorp Mortgage, Inc. (In re Coleman),* 82 B.R. 15 (Bankr.D.N.J.1988). As is apparent from a review of these authorities, while they may vary in their reasoning as to why a debtor may pay off a matured mortgage in a chapter 13 plan, they all come to the same conclusion.

Although the Second Circuit has not yet addressed this specific issue, the holding of *In re Taddeo,* 685 F.2d 24 (2nd Cir.1982) is instructive. *Taddeo* ruled that a chapter 13 debtor could "reinstate" a defaulted home mortgage and return to monthly payments by curing the default under the provisions of § 1322(b)(3) ("the plan may ... provide for the curing or waiving of any default."). The *Taddeo* court stated that "the ban on 'modification' in § 1322(b)(2) does not limit [the debtors'] exercise of their curative powers under ... § 1322(b)(3)." 685 F.2d at 28. The *Taddeo* court ultimately relied on "the overriding rehabilitation purpose of chapter 13" to support its conclusion. *Id.* at 29. Since a debtor in this circuit can use a chapter 13 plan to pay off the matured defaulted payments of a mortgage, it is but a modest extension to permit a good-faith chapter 13 debtor to pay off the entire matured debt.

### IV.

I conclude that Equity has not established a basis for the granting of either of its motions, and both motions are hereby denied.