**In re Baltazar HERNANDEZ and Iris Hernandez, Debtors.**

**Baltazar HERNANDEZ and Iris Hernandez, Plaintiffs,**

v.

**UNION NATIONAL BANK OF ARKANSAS, Defendant.**

**Bankruptcy No. 91–62029–S.**
**Adv. No. A–92–6002–S.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Jan. 12, 1993.

Robyn Ray Brumbelow, East Texas Legal Services, Inc., Longview, TX, for debtors.

Scot Goldsholl, Little Rock, AR, for Union Nat. Bank of Arkansas.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Amended Complaint of Baltazar Hernandez and wife, Iris Hernandez, Objecting to Allowed Secured Claim pursuant to regular setting in Tyler, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

## FACTUAL AND PROCEDURAL BACKGROUND

Baltazar Hernandez and wife, Iris Hernandez, hereinafter referred to as ("Debtors"), filed for relief under Chapter 13 of the Code on December 18, 1991. Subsequently, Union National Bank of Arkansas, hereinafter referred to as ("Bank"), the holder of a mortgage on Debtors' homestead, filed a secured proof of claim in the amount of $20,143.30. The present adversary proceeding seeks two forms of relief. First, Debtors allege that Bank has either failed to apply or has misapplied certain mortgage payments remitted from Debtors to Bank. Second, Debtors allege that the fair market value of the Debtors' homestead, subject to Bank's deed of trust, is significantly less than the amount of outstanding indebtedness against it. Debtors request that this Court "strip-down" the value of the lien securing the property to an allowed secured claim reflecting the property's fair market value. Debtors propose to pay both the "stripped-down" portion of Bank's allowed secured and unsecured claim resulting from the property in the context of a Chapter 13 plan of reorganization. At the regularly scheduled hearing, the matter was taken under advisement.

## DISCUSSION OF LAW

### MISAPPROPRIATION OF FUNDS

Debtors' complaint and attendant pleadings suggest that Bank has either misappropriated or misapplied several of Debtors' mortgage payments throughout the preceding years. However, with one exception, Debtors' proof has fallen short. Debtors' counsel argued strenuously that proper credit was not given for several early payments which caused all subsequent payments to be considered delinquent. Unfortunately, this argument was not supported by any evidence. On direct examination, Debtor, Baltazar Hernandez, could give only three examples of alleged misapplication. The first example involved an alleged lost payment. Bank's officer was able to demonstrate to the Court that the payment had been credited. The second example concerned an August 1990, payment which had been returned. Bank explained that its refusal to accept the payment was based on Debtors' default status at the time. While there is some dispute

over Bank's entitlement to refuse such payments, it is clear that this particular payment was not misappropriated. The third example relates to Bank's application of a $300.00 monthly payment to pay for an appraisal of Debtors' property. Bank claims that at the time the appraisal was ordered Debtors' loan was substantially in default. Debtors' dispute this last contention. At any rate, the parties, while disagreeing about which specific payment was applied to the appraisal fee, are in agreement that a payment was actually applied. On this point, the Court finds Debtors' arguments to be meritorious.

■ The mortgage between Debtors and Bank is insured by the Veteran's Administration, hereinafter ("VA"). As such, the rights of the respective parties vis-a-vis this mortgage are subject to the regulations attendant to VA insured loans. 38 C.F.R. § 36, *et seq.* At the conclusion of the hearing, the Court instructed Bank to produce authority to justify Bank's application of one of Debtors' mortgage payments towards the cost of the appraisal performed on Debtors' property. After a review of Bank's authorities, the Court is convinced that Bank's actions in this area were without justification.

Bank relies on the language contained in 38 C.F.R. § 36.4313 (1991) as justification for its actions. This section provides:

(b) ... the holder may charge against *proceeds of the sale* of the security ...

(1) any expense which is reasonably necessary for preservation of the security,

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(3) other expenses reasonably necessary for collecting the debt or repossession or liquidation of the security ... (emphasis added).

However, the language of the statute makes it abundantly clear that any such costs are to be deducted solely from the proceeds of the sale of the security. This

specific language cannot be read to authorize a premature assessment of a foreclosure related cost against a monthly mortgage payment. This Court strongly disagrees with Bank's characterization of its application of Debtors' payment as in keeping with the "spirit" of 38 C.F.R. § 36.4313(b). The clear language of this section precludes such a contention. The Court finds that Bank's action in applying $300.00 of Debtors' mortgage payments to Bank's appraisal of Debtors' property is an act of conversion. Bank is instructed to credit Debtors' account accordingly.[1]

## LIEN MODIFICATION

It is not disputed that the property at issue has an "as is" value of approximately $5,500.00. However, the indebtedness against the property, as evidenced by Bank's proof of claim, is $20,143.30. Given Bank's position as a greatly undersecured creditor, Debtors propose to modify Bank's claim into secured and unsecured portions. Debtors propose to pay one hundred (100%) percent of Bank's allowed secured claim within the context of their Chapter 13 plan. The unsecured portion of Bank's claim will also be paid within the context of Debtors' Chapter 13 plan pari passu.

■ The statutory authority on which Debtors base their proposition is contained in two specific sections of the Bankruptcy Code. First, 11 U.S.C.A. § 506(a) provides in pertinent part that "an allowed claim of [a] creditor secured by a lien on property ... is a secured claim to the extent of the value of such creditor's interest in ... such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim ..." 11 U.S.C.A. § 506(a) (West 1979 & Supp.1992). In addition, § 1322(b)(2) provides:

(b) ... the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in

---

1. The Court does not reach the question of whether Bank's actions constitute a violation of the Texas Deceptive Trade Practices Act. Tex. Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987 and Supp.1992). Debtors did not specifically plead this Act's applicability to the case.

For the most part, Debtors' contentions along these lines were vague and conclusory. To the extent such a finding is necessary, the Court finds that Debtors have failed to prove Bank's culpability pursuant to the Deceptive Trade Practices Act.

real property that is the debtor's principal residence ...

11 U.S.C.A. § 1322(b)(1) (West 1979 & Supp.1992). By its terms, § 1322(b)(2) limits the modification of a secured claim only to the extent the claim is secured solely by real property that is the debtor's principal residence. In this case, it is not disputed that the property at issue is Debtors' principal residence. Debtors also find support for their proposal in the decisions of four circuit courts. *Bellamy v. Federal Home Loan Mortgage*, 962 F.2d 176 (2nd Cir. 1992); *In re Hart*, 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir.1990); *In re Hougland*, 886 F.2d 1182 (9th Cir.1989). In pertinent part, these courts reason that the general anti-modification language contained in § 1322(b)(2) applies only to the secured portion of a claim (determined in accordance with § 506(a)) secured only by real property that is a debtor's principal residence. Debtors' argument is based on this rationale. As of the date of the hearing, this issue had not been addressed by the Fifth Circuit Court of Appeals. However, subsequent to the hearing, the Fifth Circuit in *Matter of Nobleman*, 968 F.2d 483 (5th Cir.1992) rejected this approach. Accordingly, the Court finds Debtors' argument unavailing.

■ Alternatively, Debtors contend that the anti-modification language in § 1322(b)(2) is not a bar because Bank's claim is not secured only by real property that is the Debtors' principal residence. Debtors point to paragraph 14 of the deed of trust which provides as follows:

"As additional and collateral security for the payment of the note secured hereby and the indebtedness hereinbefore described, they hereby assign to the owner of said debt all of the profits, revenues, royalties, rights and benefits accruing under all oil, gas or mineral leases now on said property, or which may hereafter be placed thereon, and the lessee/assignee, sublessee or purchaser of production, is hereby directed on production of this deed of trust or certified copy thereof, to pay said profits, revenues, royalties, rights and benefits to the owner of said debt; this provision to become effective, however, only upon default in the conditions and terms of this deed of trust for the note hereby secured, or prior to such default, upon notice of the party obligated to pay same; and to terminate and become null and void upon payment of the indebtedness hereby secured.

The preceding language is preprinted in Bank's form deed of trust.

The courts are not in accord as to the effect of standard "boiler plate" language purporting to grant a creditor additional security and whether this language constitutes sufficient additional security to overcome the anti-modification prohibition contained in § 1322(b)(2). One line of cases holds that purported conveyances of additional security consisting of collateral incidental to the ownership of realty is not the type of additional security envisioned by § 1322(b)(2). *In re Wright*, 128 B.R. 838, 843 (Bankr.N.D.Ga.1991) (security deed giving mortgagee rights in rents and profits are part of the possessory bundle of rights known as seizin and are inextricably bound to the real property); *Matter of Moreland*, 124 B.R. 921, 922 (Bankr. D.Conn.1991) (security consisting of all rents, royalties, oil and gas rights and profits, stock and all fixtures does not create additional collateral for the claim distinct from that normally considered incidental to ownership of realty); *In re Ross*, 107 B.R. 759, 762 (Bankr.W.D.Okl.1989) (common boiler plate language in mortgage instruments does not constitute additional security for a debt which would preclude the application of § 1322(b)(2); *In re Hougland*, 93 B.R. 718, 721 (D.Or.1988) (language in a security instrument pertaining to rents, issues and profits could not be distinguished from the lien on the property).

On the other hand, a second line of cases is more supportive of Debtors' position. *In re Jackson*, 136 B.R. 797, 802 (Bankr. N.D.Ill.1992) (pledge of rents, issues, royalties and profits of the property is additional security); *Secor Bank, Federal Sav. Bank v. Dunlap*, 129 B.R. 463, 465 (E.D.La.1991) (additional security consisting of all ease-

ments, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock in all fixtures constitutes additional security); *In re Klein,* 106 B.R. 396, 401 (Bankr.E.D.Pa.1989) (finding that a creditor's use of language in the deed instrument pertaining to rents, issues and profits thereof must have been included for some purpose); *In re Crompton,* 73 B.R. 800, 806 (Bankr.E.D.Pa.1987). Recently, the Third Circuit Court of Appeals in *Sapos v. Provident Inst. of Sav. in Town of Boston,* 967 F.2d 918 (3rd Cir. 1992) followed this line of cases in holding that additional security consisting of wall-to-wall carpeting, rent and profits constituted additional security for the purpose of § 1322(b)(2) lien modification. Based on the rationale adopted by these courts Debtors seek this Court's determination that Bank's taking of additional security in the form of paragraph 14 allows Debtors to modify Bank's claim pursuant to § 1322(b)(2).

The Fifth Circuit has not specifically addressed this issue. Recently, in the case of *Matter of Washington,* 967 F.2d 173 (5th Cir.1992) the court concluded that credit life and disability insurance attendant to a mortgage does not constitute additional security for the purpose of § 1322(b)(2) modification. The court's holding was premised on its conclusion that the debtors' insurance policy "is at best illusory security—security contingent on events which may never occur." *Id.* at 176.

Debtors' argument that paragraph 14 constitutes additional security is premised on the Texas state law distinction between surface and subsurface estates. Since in Texas, the subsurface interest in land can be separately conveyed away from the surface interest Debtors maintain that Bank's taking of a security interest pursuant to paragraph 14 constitutes additional security. The Court cannot agree. The Court is of the opinion that Debtors misconstrue Texas state law.

It is clearly established in Texas that until a severance is effected, "the mineral estate remains with the surface estate; the original fee carries both estates." *Zahn v.*

*Nat'l Bank of Commerce of Dallas,* 328 S.W.2d 783 (Tex.Civ.App.—Dallas 1959); *Humble Oil & Refining Co. v. West,* 508 S.W.2d 812, 815 (Tex.1974). This precedent has been recognized by the Fifth Circuit Court of Appeals. *REO Industries v. Natural Gas Pipeline Co.,* 932 F.2d 447, 453 (5th Cir.1991) (under Texas law, oil or gas in place beneath the surface, is part of the realty, and becomes personalty upon production and severance). There is no evidence to suggest that Debtors have severed their surface and subsurface estates; the property is not presently being used for oil and gas production purposes.

Furthermore, the additional security provided through paragraph 14 is only substantive upon the occurrence of a double contingency. First, Debtors must initiate oil and gas production; Bank may not under any circumstance act as the initiating party. Second, even if oil and gas production is initiated on the property, Bank's rights in the additional security reaches fruition only if Debtors are in default.

Debtors purchased an unsevered fee simple interest in land. Bank's deed of trust is secured by the land conveyed. The Court finds that the additional security contained in paragraph 14 is, under the facts of this case, incidental to Debtors' ownership of the property, is contingent on events which may never occur, and hence does not constitute the type of additional security envisioned by § 1322(b)(2).

Accordingly, the Court finds that Debtors are precluded from modifying Bank's claim pursuant to § 1322(b)(2) of the Code. Subject to Bank's crediting of $300.00 to Debtors' account Debtors' complaint objecting to allowed secured claim is in all other respects DENIED. Bank's claim is an allowed secured claim in the amount of $19,843.30.