**In re Susan E. HALPERIN, Debtor.**

**Bankruptcy No. 2–93–03769.**

United States Bankruptcy Court,
D. Connecticut.

Aug. 8, 1994.

Charles A. Maglieri, Bloomfield, CT, for debtor.

Randall S. McHugh, Reiner & Reiner, P.C., Farmington, CT, for Dime Sav. Bank of New York, FSB, objecting creditor.

Gilbert L. Rosenbaum, Chapter 13 Trustee, Hartford, CT.

*MEMORANDUM OF DECISION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN*

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The matter before the court is the confirmation of a Chapter 13 plan to which The

Dime Savings Bank of New York, FSB ("Dime"), the holder of a first mortgage on the debtor's residence, has filed an objection. The issue for decision, submitted by way of a stipulation of facts and the parties' memoranda, is whether the debtor's plan circumvents the prohibition against stripping down an undersecured first mortgage on a debtor's residence on the basis that Dime's mortgage extends to collateral in addition to the real property.

## II.

Susan E. Halperin, Esq., the debtor and a practicing attorney, filed for relief under Chapter 13 on October 1, 1993, and on November 22, 1993 filed her First Amended Plan ("plan"). The debtor also filed a motion, pursuant to Code § 506(a) and Fed. R.Bankr.P. 3012, to have the court value the debtor's principal residence, known as 490 Prospect Avenue, Hartford, Connecticut, and determine the secured and unsecured portions of Dime's total claim of $241,211.93. The court, on February 4, 1994, based upon the parties' consent, entered an order finding the value of the residence to be $185,000, the mortgage claim secured to the extent of $185,000 and unsecured to the extent of $56,211.93.

The debtor's plan provides, in material part, that the Dime mortgage, which is in default, be decelerated during the five-year term of the plan through the Chapter 13 trustee paying to Dime the mortgage arrearage, and that Dime receive, along with other Class 2 unsecured creditors, a 10% dividend on their unsecured claims. The debtor proposes thereby to reinstate the mortgage's original payment schedule and to pay, outside the plan, the regular monthly mortgage payment to Dime only to the extent of the secured claim plus interest. The debtor proposes to pay to the trustee 60 monthly payments totaling not less than $44,280, which the trustee is to apply to certain priority unpaid federal income taxes, the Dime mortgage arrearage, and the 10% dividend to unsecured creditors.

Dime filed an objection to the plan asserting that, as determined in *Nobelman v. American Savings Bank,* — U.S. —, —, 113 S.Ct. 2106, 2108, 124 L.Ed.2d 228 (1993), Code "§ 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." The debtor responds that § 1322(b)(2),[1] which prohibits a plan from modifying the rights of holders of secured claims "secured only by a security interest in real property that is the debtor's principal residence," does not apply here because Dime's security agreement extends to additional collateral described in the security agreement: i.e., (a) "easements, rights, appurtenances, rents, royalties, minerals, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property," together with "[a]ll replacements and additions"; (b) certain funds to be held by Dime in escrow to pay for real estate taxes and hazard insurance premiums; and (c) any awards for the taking of any part of the property or for the conveyance of the property in lieu of condemnation. The debtor notes that she conducts her law practice at her residence, owner-occupied businesses being permitted by the local zoning law.

## III.

The issue of whether an undersecured residential mortgage can be bifurcated into secured and unsecured claims because the security interest was secured by other collateral in addition to the residence has received varying treatment in the courts. See generally Daniel C. Fleming and Marianne McConnell, *The Treatment of Residential Mortgages In Chapter 13 After Nobelman,* 2 Am.Bankr.Inst.L.Rev. 147 (1994). As emphasized in Dime's memorandum, two bankruptcy judges in this district have previously

---

1. The relevant parts of § 1322(b) read as follows:
(b) ... the plan may—

   . . . . .

   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the

debtor's principal residence, or of holders of unsecured claims ...;
   (3) provide for the curing or waiving of any default....
11 U.S.C. § 1322(b)(2).

ruled that a residential mortgagee has not taken additional security interests in more than the real property when the security interest is in property interests that have some corresponding connection to the real property and are standard provisions in home mortgages. *See In re Moreland,* 124 B.R. 921, 922 (Bankr.D.Conn.1991) (Krechevsky, J.) (residential mortgage which extends to rents, royalties, oil and gas rights and profits, stock and all fixtures does not create additional collateral for the claim distinct from that normally considered incidental to ownership of realty within the contemplation of § 1322(b)(2)); *In re Spano,* 161 B.R. 880, 884–90 (Bankr.D.Conn.1993) (Shiff, J.) (Under Connecticut law, rents, fixtures, right to hazard insurance proceeds, and mineral rights all relate to particular real property and mortgage granting mortgagee interest in such items does not remove mortgage from protection of § 1322(b)(2)). *Cf. Adebanjo v. Dime Sav. Bank (In re Adebanjo),* 165 B.R. 98, 104 (Bankr.D.Conn.1994) (Shiff, J.) (Chapter 13 plan not barred from modifying claim secured by debtor's principal residence and two rental units in which debtors do not reside.).

The debtor, in her memorandum, requests this court not to follow *Moreland* and *Spano* and to accept the construction adopted by Third Circuit rulings—that if a mortgagee takes a security interest in any of the above-identified items, the mortgage, under the express terms of § 1322(b)(2), takes security interests in property other than the real property. *Sapos v. Provident Inst. of Sav.,* 967 F.2d 918, 925 (3d Cir.1992) (Security interest in wall-to-wall carpeting and rents and profits placed claim outside the anti-modification provision of § 1322(b)(2).); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 128–29 (3d Cir.1990) (holding alternatively that rights of undersecured claimant could be modified notwithstanding § 1322(b)(2) because mortgagee's security interest, which attached to appliances, machinery, furniture, and equipment (whether fixtures or not), was not secured only by a security interest in real property); *In re Hammond,* 27 F.3d 52, 57–58 (3d Cir.1994) (determining that *Nobelman* did not overrule the holdings of *Sapos* and *Wilson* that

§ 1322(b)(2) did not apply to mortgagees who take security interests in personal property in addition to real property that is the debtor's principal residence), *reh'g and suggestion for reh'g denied* (July 7, 1994). *Cf. In re Bouvier,* 160 B.R. 24, 25 (Bankr.D.R.I.1993) (undersecured residential mortgage outside of § 1322(b)(2) where mortgagee took additional security interest in business assets of corporation controlled by debtors).

After due reflection this court is satisfied that the *Moreland* and *Spano* rulings, which are consonant with decisions in other circuits, are correctly decided and declines to depart from their holdings. *See In re Davis,* 989 F.2d 208, 212 (6th Cir.1993) (Creditor's requirement that debtor obtain fire hazard insurance with creditor as beneficiary, and language in security deed which conveyed "[a]ppurtenances, rents, royalties, profits, and fixtures thereto appertaining" did not constitute additional security sufficient to remove creditor from meaning of § 1322(b)(2). "[T]he clear weight of authority supports a finding that the addition of the boilerplate phrase 'rents, royalties, profits, and fixtures' to a mortgage or deed of trust will not generally remove the claim from the protection of § 1322(b)(2)."); *In re Washington,* 967 F.2d 173, 175 (5th Cir.1992) (Optional credit life and disability insurance was not additional security within meaning of § 1322(b)(2) prohibiting modification of secured creditor's claim secured only by security interest in debtor's principal residence. "[I]nterpreting 'additional security' to include optional credit life and disability insurance would defeat this purpose [to protect creditors] for such insurance has become a standard accompaniment for mortgage loans.").

■ The additional arguments that the debtor makes concerning the security interest in nonrefunded escrow funds and the provisions for payment of condemnation awards do not require a different ruling. The court believes that the *Hammond*-type holding is inconsistent with the underpinning of *Nobelman,* that § 1322(b)(2) coincides with Congress's intent to "encourage the flow of capital into the home lending market." *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2112 (Stevens, J., concurring).

## IV.

The objection of Dime to confirmation of the debtor's plan is sustained, and, accordingly, the court denies confirmation of the plan because it impermissibly modifies Dime's rights as the holder of a security interest in the debtor's principal residence. It is

SO ORDERED.