**In re Winslow R. LIEVSAY, Debtor.**

**Winslow R. LIEVSAY, Appellant,**

v.

**WESTERN FINANCIAL SAVINGS BANK, F.S.B., a Federal Savings Bank; and United States Trustee, Appellees.**

BAP No. CC–95–1391–RoVJ.
Bankruptcy No. SA 94–21241 JW.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Decided Aug. 14, 1996.

Winslow R. Lievsay, Mission Viejo, CA, pro se.

Kenneth D. Passon, Irvine, CA, for Western Financial Savings Bank.

## OPINION

Before ROSS [1], VOLINN and JONES, Bankruptcy Judges.

1. Hon. Herbert A. Ross, Bankruptcy Judge for the District of Alaska, sitting by designation.

VOLINN, Judge.

## INTRODUCTION

The debtor's chapter 11 disclosure statement proposed to strip down a lien secured by his principal residence. Although generally debtors are not permitted to strip down a lien secured by the debtor's personal residence, the debtor argued that "boilerplate" language contained in the deed of trust should have been construed to secure property other than his residence, especially since he maintained an office at the residence. The court refused to interpret the deed of trust broadly and denied approval of the debtor's plan. The Panel granted leave to appeal an interlocutory order and affirms.

## BACKGROUND FACTS

Winslow Lievsay, the debtor, filed his chapter 11 petition in November, 1994. His assets included real property which served as both his primary personal residence and his business office. The property, which had a fair market value of approximately $260,000, was subject to a secured claim by Western Financial Savings Bank ("WFSB") of approximately $312,000.[2] The debtor's plan proposed to "strip-down" ·his home mortgage and bifurcate WFSB's claims into secured and unsecured components pursuant to section 506(a).[3]

WFSB opposed the plan and argued that Section 1123(b)(5),[4] which limits a debtor's ability to strip-down "a claim secured only by a security interest in real property that is the

debtor's principal residence," prohibited the bifurcation of its claim. The debtor argued that section 1123(b)(5) did not prohibit the proposed strip-down because WFSB's claim was secured by property other than the debtor's principal residence, including his business office.[5]

The bankruptcy court found that the multiple uses of the residence and the deed of trust language did not divest WFSB of its section 1123(b)(5) protection.[6] The court found that the intent of section 1123(b)(5) was to protect home mortgage lenders such as WFSB; therefore, the court entered an order denying confirmation of the plan. The debtor filed this timely appeal.

■ Although an order denying confirmation of a plan is interlocutory, the Panel granted leave to appeal as substantial differences exist among the circuits' treatment of bifurcation of home mortgages that contain additional collateral language. *In re Sperna,* 173 B.R. 654, 657–58 (9th Cir. BAP 1994) (order denying confirmation of a plan is a non-appealable interlocutory appeal, but leave was granted because of the substantial differences of opinion on the controlling issue); *In re Nicholes,* 184 B.R. 82, 86–87 (9th Cir. BAP 1995) (leave to appeal is appropriate when differences of opinion exist between controlling issue and immediate appeal may materially advance the ultimate termination of litigation).

## ISSUE

Whether "boilerplate" language contained in a deed of trust which could be read to

---

2. The property is also encumbered by a junior lien of $50,000.

3. Unless otherwise stated, all references to "sections", "§" and rules refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101 et seq.

   Section 506(a) defines allowed secured and unsecured claims as follows:

   An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

4. Section 1123(b)(5) provides in pertinent part that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." (West 1996).

5. The property subject to the deed included "all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property" and all replacements and additions.

6. The court stated: "Every deed of trust contains that kind of language. And if I were to say that because these reservations of certain things are personalty, the debt is no longer secured solely by real estate . . . I would be breaking new ground which I choose not to break."

secure property other than the debtor's personal residence, excludes the debt from the protection offered by section 1123(b)(5) to home mortgage lenders and allows bifurcation of the claim into secured and unsecured portions.

## STANDARD OF REVIEW

The bankruptcy court's interpretation of the statute is subject to de novo review. *In re Consolidated Pioneer Mortgage,* 178 B.R. 222 (9th Cir. BAP 1995). The court based its determination on undisputed facts, and a court's factual findings, whether written or oral, are subject to the clearly erroneous standard of review. *Ankeny v. Meyer (In re Ankeny),* 184 B.R. 64, 68 (9th Cir. BAP 1995); Fed.R.Bankr.P. 8013.

## DISCUSSION

Section 1123(b)(5) was added to the Bankruptcy Code in 1994 to harmonize the treatment of home mortgage loans in Chapter 11 and Chapter 13. *See* H.R.Rep. No. 103–834, 103d. Cong., 2nd Sess. at 22 (1994), U.S.Code Cong. & Admin.News 1994 at 3323, *reprinted in Norton Bankruptcy Law and Practice 2d* (1995–96 ed.) at 1013. Because section 1123(a)(5) is relatively new, there are few cases interpreting its effect. There is, however, extensive caselaw regarding the interaction of section 506 and section 1322(b)(2).[7] Given the congressional intent to harmonize the two chapters' treatment of home mortgages, and the nearly identical language of the two sections, we will use these cases to guide us here.

The specific question we address is whether section 1123(a)(5) precludes a chapter 11 debtor from relying on section 506(a) to modify the unsecured portion of an undersecured mortgage claim, or whether the debtor is entitled to bifurcate a secured claim pursuant to section 506(a).

Although this question is apparently one of first impression in this circuit, other circuits have addressed the interaction of section 506(a) and section 1322(b)(2). The

Sixth Circuit, for instance, has found that "the clear weight of authority supports a finding that the addition of the boilerplate phrase 'rents, royalties, profits, and fixtures' to a mortgage or deed of trust will not generally remove the claim from the protection of s 1322(b)(2)." *In re Davis,* 989 F.2d 208, 212 (6th Cir.1993). On the other hand, the Third Circuit found that a deed of trust which secured "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereinafter installed in or upon the premises" constituted additional security and, therefore, section 1322(b)(2) did not prohibit the modification of the mortgage. *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 124 (3d Cir.1990). *See also In re Ramirez,* 62 B.R. 668 (Bankr.S.D.Cal.1986) (finding that the bank had a security interest in property that contained both the debtor's principal residence and rental units, and where rental income was significant portion of debtor's income and was relied upon by the bank when approving debtor's loan, the loan was not secured only by property that was the debtor's principal residence and therefore could be modified).

Although the language in this deed of trust is not identical to that considered by the *Davis* court, we agree with the Sixth Circuit's analysis that, unlike the language in the deed of trust in *Wilson,* "the language in the case *sub judice* does not extend [the secured creditor's] security interest beyond items which are inextricably bound to the real property itself as part of the possessory bundle of rights." *Davis,* 989 F.2d at 213. *See also, In re Eastwood,* 192 B.R. 96, 104–05 (Bankr.D.N.J.1996) (finding that language identical to that considered here did not grant "additional collateral" to the bank holding the security interest in the debtor's property). *But see In re Pinto,* 191 B.R. 610, 614 (Bankr.D.N.J.1996) (on identical language, finding that the bank had a "security interest in additional collateral" and therefore was not within the protection of the antimodification provision). Thus, although the debtor argues the language of the deed of trust

---

7. Section 1322(b)(2) provides in pertinent part that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." (West 1996).

demonstrates that its reach is greater than a security interest in his residence alone, he has not shown that to be the case.[8]

■ The debtor also argues that the fact that his office is in his home changes the result. In *Ramirez*, the court stated that "[i]n the absence of a showing that the debtors clearly used [their property] for any principal purpose other than their residence, [this court] must consider the entire ... property as their principal residence." *Ramirez*, 62 B.R. at 669 (quoting *In re Ballard*, 4 B.R. 271, 276 (Bankr.E.D.Va.1980)). Here, the debtor has shown that he used the property for his office. However, he has not shown that this use added significant value to the property or that the bank relied on the additional security offered by his home office. In the absence of that proof, we are not prepared to say that the bank had sufficient security in assets that were not part of the debtor's principal residence that the bank should be denied the protection of section 1123(b)(5).

### CONCLUSION

■ Section 1123(b)(5) is intended to protect a particular class of lenders; its reach should be construed strictly to keep the lender from overreaching and to effectuate the fresh start policy of the Code. However, the "additional collateral" language in the deed of trust is so closely associated with securing the primary residence that it prohibits Debtor from stripping down the lien under section 1123(b)(5). Therefore, we AFFIRM the court's order denying approval of Debtor's plan.

---

8. While it is true that, were a gold mine to be developed on the subject property, the bank would doubtless assert a collateral interest in it, there is no indication of the possibility that such an interest might exist.