In re Kyoo Jung **LEE** and Ann Soon Lee, Debtors.

Kyoo Jung **LEE** and Ann Soon Lee, Appellants,

v.

**HOME SAVINGS OF AMERICA,** Appellee.

BAP No. CC–96–1959–JSH.

Bankruptcy No. SA 95–10514–JW.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 23, 1997.

Decided Oct. 17, 1997.

Andrew S. Bisom, Irvine, CA, for Appellants.

Hal M. Marzell, Irwindale, CA, for Appellee.

Before JONES, SNYDER[1], and HAGAN, Bankruptcy Judges.

### OPINION

JONES, Bankruptcy Judge.

Kyoo Jung Lee and Ann Soon Lee ("Debtors"), sought to strip Home Savings of America's ("Home Savings") deed of trust on the Debtors' residence. The Debtors contended that Home Savings' deed of trust took a security interest in property other than the Debtors' principal residence, thereby preventing Home Savings from claiming the protections of § 1123(b)(5).[2] The bankruptcy court disagreed and ruled that the bank's deed of trust was secured solely by the Debtors' principal residence. The Debtors appealed and we **AFFIRM**.

## I. FACTS

In July of 1990, the Debtors purchased their home in Laguna Hills, California. On July 2, 1990, the Debtors executed a note and deed of trust in favor of Home Savings in the principal amount of $1,050,000.

On January 17, 1995, the Debtors filed their chapter 11 petition. At the time the case was commenced, the Debtors claimed their home was worth approximately $900,-000. On February 8, 1995, Home Savings filed a proof of claim for $1,036,522.11 as the amount owing on the deed of trust. The Debtors filed an objection to Home Savings' claim and attempted to strip down the amount of Home Savings' secured claim to the present value of the property. The Debtors contended that the deed of trust attempted to take a security interest in property other than the Debtors' principal residence, and therefore the anti-modification provisions of 1123(b)(5) did not protect Home Savings' claim.

Home Savings responded that the deed of trust was secured solely by the Debtors' residence and therefore the Debtors could not reduce the value of Home Savings' secured claim. On September 11, 1996, the bankruptcy court held a hearing on the Debtors' motion and found that Home Savings' loan was secured by the Debtors' residence and therefore ruled that the deed of trust could not be stripped. The Debtors timely appealed.

## II. ISSUES

Whether the bankruptcy court erred in holding that Home Savings' deed of trust was secured solely by the Debtors' residence thereby preventing Home Savings' secured claim from being stripped.

## III. STANDARDS OF REVIEW

We review a bankruptcy court's statutory construction de novo. *In re Consolidated Pioneer Mortgage*, 178 B.R. 222, 225 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151 (9th Cir.1996). We review a bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *In re Alsberg*, 68 F.3d 312, 314 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996).

## IV. DISCUSSION

The amount of a creditor's claim which will be allowed as a secured claim is governed by

---

1. Hon. Paul B. Snyder, Bankruptcy Judge for the Western District of Washington, sitting by designation.

2. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and to the Federal Rules of Bankruptcy procedure, Rules 1001, *et seq.*

§ 506(a). Section 506(a) defines allowed secured and unsecured claims as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed secured claim.

11 U.S.C. § 506(a) (1994). Thus, 506(a) bifurcates an under-secured creditor's claim into two parts—a secured claim to the extent of the value of the collateral and an unsecured claim for the balance of the creditor's claim. H.R.Rep. No. 95–595, 356 (1977), *reprinted in* Norton Bankruptcy Code Pamphlet 1996–1997 Edition, 438. In the present case, the Debtors claimed that the subject property was only worth $900,000. As Home Savings had filed a proof of claim for $1,036,-522.11, the Debtors contended that Home Savings secured claim should be "stripped" down to the value of the property securing the deed of trust (i.e. $900,000), with the remainder of Home Savings' claim to be unsecured.[3]

However, in 1994 Congress amended the bankruptcy code to create a exception to lien stripping under § 506(a) for chapter 11 home mortgage lenders. Section 1123(b)(5) provides that a plan of reorganization may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence ....*" 11 U.S.C. § 1123(b)(5) (1994) (emphasis added). Thus, if the home mortgage lender's claim is secured only by an interest in the debtor's principal residence, the lien stripping provisions of § 506(a) cannot be used to modify the under-secured creditor's lien into secured and unsecured portions.

In the present case, the Debtors contend that Home Savings took a security interest in property other than the Debtors' principal residence, and therefore the anti-modification

provisions of 1123(b)(5) have no effect. Home Savings responds that the language in the deed of trust is "boilerplate" and did not, nor was ever intended to, create a security interest in anything other than the Debtors' principal residence.

Before analyzing whether the deed of trust language created a security interest in property other than the Debtors' principal residence, we note that Congress added section 1123(b)(5) to harmonize the treatment of home mortgage loans in chapter 11 and chapter 13 cases.[4] *In re Lievsay,* 199 B.R. 705, 708 (9th Cir. BAP 1996), *appeal dismissed,* 118 F.3d 661 (9th Cir.1997). As § 1123(b)(5) is relatively new, there are few cases interpreting its scope. There are, however, a number of cases interpreting the interplay between § 506(a) and chapter 13's anti-modification provision found in § 1322(b)(2). Given Congress' intent to harmonize the two chapters' treatment of home mortgages, and the nearly identical language contained in the two sections, we will refer to both chapter 11 and chapter 13 cases to guide us. *In re Lievsay,* 199 B.R. at 708.

The bankruptcy court ruled that the deed of trust was secured by the Debtor's principal residence. We review the bankruptcy court's interpretation of § 1123(b)(5) de novo. *In re Consolidated Pioneer Mortgage,* 178 B.R. at 225. The specific issue before this panel is whether the additional language in Home Savings' deed of trust creates a security interest in other property sufficient to remove the deed of trust from the anti-modification provisions of 1123(b)(5). In deciding this case, we must briefly review the history of 1322(b)(2) in order to establish an analytical framework.

In 1993, the United States Supreme Court heard the case of *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In that case the debtor argued that the anti-modification provisions of § 1322(b)(2) merely prevented the modification of the secured portion of a loan

---

**3.** We note for the record that there also appears to be an outstanding property tax lien in the amount of $45,280.34. However, because we hold that Home Savings' lien was secured by the

Debtors' principal residence, this purported lien is irrelevant to our analysis.

**4.** *Compare* § 1123(b)(5) *with* § 1322(b)(2).

which had already been stripped pursuant to § 506(a). *Id.* at 327–28, 113 S.Ct. at 2109–10. The Supreme Court rejected this argument and held that 1322(b)(2) precluded the use of § 506(a) when the loan was secured by the debtor's principal residence. However, in the *Nobelman* case, the lender had also taken a security interest in "an undivided .67% interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents, in addition to the residence itself." *Nobelman v. American Sav. Bank* (*In re Nobelman*), 129 B.R. 98, 104 (N.D.Tex.1991), *aff'd,* 968 F.2d 483 (5th Cir.1992), *aff'd,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In denying the debtor the use of § 506(a) to strip down the loan, the Supreme Court did not address the issue of whether the "additional security" removed the mortgage from the anti-modification provisions of § 1322(b)(2). Consequently, there arose a split of authority on the question of whether additional security in a deed of trust removes the anti-modification protections of the bankruptcy code.

On one side of the split are courts which read the language "secured only by a security interest in real property that is the debtor's principal residence" as prohibiting mortgage lenders from taking any other type of security interest. These courts contend that any additional security beyond the debtor's principal residence removes the anti-modification protection afforded mortgage lenders. *See Lomas Mortgage v. Louis,* 82 F.3d 1, 7 (1st Cir.1996); *Hammond v. Commonwealth Mortgage Corp. of Am.* (*In re Hammond*), 27 F.3d 52, 56–57 (3rd Cir.1990); *In re Escue,* 184 B.R. 287, 291–92 (Bankr.M.D.Tenn. 1995).

On the other side of the issue are courts which adhere to the legislative intent of Congress in drafting the section as a protection to mortgage lenders. These courts note that while there may be other items included in the deed of trust, if these items are "inextricably bound to the real property itself as part of the possessory bundle of rights," *In re Davis,* 989 F.2d 208, 213 (6th Cir.1993), or if the additional collateral is "nothing more than an enhancement which is or can, by agreement of the parties, be made a compo-

nent part of the real property or is of little or no independent value," *In re French,* 174 B.R. 1, 7 (Bankr.Mass.1994), then these additional items will not remove the deed of trust from the anti-modification provisions of the bankruptcy code. These courts emphasize the public policy behind the anti-modification provisions which is to "encourage the flow of capital into the home lending market." *Nobelman,* 508 U.S. at 332, 113 S.Ct. at 2112 (Stevens, J., concurring). These courts note that a strict interpretation of the anti-modification provisions of the bankruptcy code would seriously undermine the availability of funds provided to mortgage borrowers. *See In re Fountain,* 197 B.R. 748, 751 (Bankr. N.H.1996); *In re Smith,* 176 B.R. 298, 301 (Bankr.N.H.1994). Therefore, these courts hold that "boilerplate" language in a deed of trust will not divest the mortgage lender of the anti-modification protections of the bankruptcy code.

In 1996, this court was confronted with the interplay between § 506(a) and § 1123(b)(5) in the case of *In re Lievsay,* 199 B.R. 705 (9th Cir. BAP 1996), *appeal dismissed,* 118 F.3d 661 (9th Cir.1997). In that case this panel concluded that the " 'additional collateral' language in the deed of trust is so closely associated with securing the primary residence that it prohibits the Debtor from stripping down the lien under section 1123(b)(5)." *Id.* at 709. Thus, this court has aligned itself with those courts which adhere to Congress' intent to protect home mortgage lenders.

We now turn our attention to the specific language of the deed of trust at issue. The relevant language purports to take a security interest in:

all buildings, structures, improvements, fixtures and appurtenances now or hereafter placed thereon, including, but not limited to, all apparatus and equipment, whether or not physically affixed to the land or any building used to provide or supply air cooling, air-conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal, or other services; and all waste vent systems, antennas, pool equipment, window coverings drapes and drapery rods,

carpeting and floor coverings, awnings, ranges, ovens, water heaters and attached cabinets; it being intended and agreed that such items be conclusively deemed to be affixed to and to be part of the real property that is conveyed hereby. . . .

The Debtor argues that the deed of trust takes a security interest in "the oven, range, washer, dryer and dishwasher without regard to whether the appliance is affixed to the property." This collateral, the Debtor argues, "is independent from the Debtor's residential real property and is intended to create a security interest in personalty." Therefore, the Debtor argues that Home Savings is not protected by 1123(b)(5).

Home Savings responds that the deed of trust makes it clear that the items Debtors refer to were "conclusively deemed to be affixed to and to be part of the real property." Home Savings continues, "the security was always intended to be the primary residence. The items set forth in the deed of trust were items considered by [Home Savings] to be 'affixed to the land' and part and parcel of the residence."

We agree with Home Savings. In the present case, Home Savings loaned the Debtors over one million dollars for the purchase of their home. There is no dispute that the Debtors use this home as their primary residence. Nevertheless, the Debtors claim that Home Savings attempted to enhance the collateral securing the loan by the value of the washer and dryer, oven, range and dishwasher. These items, the Debtors claim, are additional security which renders the loan modifiable pursuant to § 506(a). We disagree.

The panel is persuaded by the *French* court's analysis of "additional collateral." That court held that the mortgage lender should not be deprived of the anti-modification protection of the bankruptcy code when

the "additional collateral" is in reality "nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property or is of little or no independent value." *French*, 174 B.R. at 7. In the present case the deed of trust recites that the parties "intended and agreed that such items be conclusively deemed to be affixed to and to be part of the real property." This language reflects an "agreement of the parties" that such items be deemed part of the real property. *Id.* Therefore, the bankruptcy court did not err in concluding that the deed of trust was secured by the Debtors' principal residence.

Furthermore, the *French* case notes that "additional collateral" with "little or no independent value" should not divest the mortgage lender of the anti-modification provisions of the bankruptcy code. In the present case, Home Savings loaned the Debtor over one million dollars. Even assuming arguendo that Home Savings did intend to take an interest in the washer and dryer, range, oven and dishwasher, this "additional collateral" is worth little in comparison to the mortgage loan extended by Home Savings.[5]

Having considered the arguments made by counsel, the relevant case law from other jurisdictions as well as this court's prior rulings on the subject, we are persuaded on the facts of this case that Home Savings' deed of trust is secured only by the Debtors' principal residence. Therefore, the Debtors are prohibited by 1123(b)(5) from stripping Home Savings' deed of trust.[6]

## V. CONCLUSION

This court is persuaded by the reasoning of the *French* court and holds that on the facts of this case, the "additional collateral" contained in Home Savings' deed of trust was, by agreement, made part of the real

---

**5.** In fact, as a practical matter, this "additional collateral" is worthless. There is no indication in the record that Home Savings filed the deed of trust as a financing statement in order to perfect the alleged security interest in the personal property. Therefore, if Home Savings did intend the appliances to be additional collateral, the security interest remains unperfected. As an unperfected security interest, the bankruptcy trustee is able to avoid the security interest in the property,

thereby making the "additional collateral" worthless. *See* 11 U.S.C. § 544.

**6.** We note for future reference that Home Savings could avoid ambiguity in its residential deeds of trust by adding a sentence which indicates that "nothing in this deed of trust is intended to create a security interest in property other than that real property which is the trustor's principal place of residence."

property securing the loan. Alternatively, the "additional collateral" was of such insignificant value compared to the mortgage it was ostensibly securing, that it would be inequitable to allow the Debtor to strip Home Savings' mortgage. We therefore **AFFIRM** the bankruptcy court.