In re David and Marilyn
LOPER, Debtors.

**U.S. RURAL HOUSING AND COMMU-
NITY DEVELOPMENT SERVICE
(RECDS) et al., Appellants,**

v.

**David and Marilyn LOPER, Appellees.**

No. 96–CV–270.

United States District Court,
D. Vermont.

July 14, 1998.

432

Melissa A.D. Ranaldo, AUSA, Office of U.S. Atty., Burlington, VT, for U.S. (Rural Economic and Community Development Service), Daniel Glickman, Russell Higgins, and Roberta Harold.

Geoffry F. Walsh, Medicare Advocacy Project, Springfield, VT, for David Loper and Marilyn Jill Loper.

### OPINION AND ORDER

SESSIONS, District Judge.

This is an appeal from an order of the Bankruptcy Judge granting the Lopers' Motion for Summary Judgment (and denying RECDS' Motion for Partial Summary Judgment, as that order related to the treatment of RECDS' mortgage lien on the Lopers' principal residence). *See* Second Amended Order, dated July 15, 1998 in Appellants' Appendix at 541–542. The sole issue on appeal is whether the Bankruptcy Court was correct in holding that the Lopers could "strip down" RECDS' secured claim to the current fair market value of the real and personal property serving as mortgage collateral, with any amount in excess to be

treated as a general unsecured claim under the Lopers' Chapter 13 plan.

For the reasons discussed below, we affirm the Bankruptcy Judge's order and remand this matter to Bankruptcy Court so that the Chapter 13 proceedings may resume.

## I. *Factual Background*

On December 1, 1988, the Lopers borrowed $85,000.00 from the Farmers Home Administration ("FmHA") (later renamed, and referred to throughout this Opinion and Order as, Rural Economic and Community Development Service ("RECDS")) to fund the purchase of their principal residence pursuant to RECDS' rural housing loan program, known as the "Section 502" program. To secure the loan, the Lopers executed a mortgage secured by their dwelling, land and "all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds,. . . ." Appellants' Appendix at 273.

The RECDS appraisers gave the house a fair market value of $85,000.00, noting a television satellite dish, wood stove, range/oven, refrigerator and carpet on the premises. The appraiser assigned only the carpeting an independent value of $1,476.00. Appellants' Appendix at 184. The broker's listing indicated that the sellers were asking $400.00 for the refrigerator and $200.00 for the wood stove. Appellants' Appendix at 260, 267. Mrs. Loper has filed an affidavit stating that the sellers told the Lopers that the satellite dish had been recently purchased for $1000.00. Appellants' Appendix at 476. Although no personal property was described in the purchase and sale contract, the Lopers negotiated with the sellers to include the satellite dish, appliances and carpet in the sale. *Id.* The Lopers therefore used the funds borrowed from RECDS to purchase those items when they purchased their house and land.

The Lopers did not execute any document other than the mortgage with respect to the RECDS lien on the satellite dish, appliances and carpeting included in the sale, and RECDS did not file a separate security agreement with respect to any of those items. Appellants' Appendix at 259–260. According to the Appellants, in the event of a default by a Section 502 borrower, RECDS has never attempted to recover or liquidate any personal property securing a mortgage lien; the agency has only attempted to foreclose on the land and dwelling that constitute the borrower's principal residence. Appellants' Brief at 6.

The Lopers executed a Reamortization Agreement with RECDS on April 15, 1993 which increased the mortgage debt to $87,229.87. Appellants' Appendix at 145. The note provides that upon default, RECDS may demand all or any portion of the principal amount. *Id.* At the time of the reamortization, the Lopers had a clothes washer and dryer in the house in addition to the satellite dish, appliances and carpeting which were on the premises when the original mortgage was executed. Appellants' Appendix at 172; M. Loper Affidavit. There is nothing in the record to indicate, however, that the Lopers used RECDS funds to purchase the washer and dryer. The increase in the mortgage debt was attributable to interest accrued during a brief moratorium on mortgage payments under the Reamortization Agreement.

On April 12, 1994, RECDS accelerated the loan after the Lopers had fallen behind in their mortgage payments. Appellants' Appendix at 153. After acceleration, RECDS refused to accept further mortgage payments from the Lopers (Appellees' Brief at 3) and filed a complaint in this Court on April 10, 1995, seeking foreclosure. That foreclosure action was stayed when the Lopers filed a petition for relief under Chapter 13 of the Bankruptcy Code on December 8, 1995.

RECDS filed a proof of claim with the Bankruptcy Court, asserting a perfected secured claim in the amount of $134,200.10. Appellants' Appendix at 270–282; Appellees' Supplemental Appendix at 1. RECDS also claimed pre-petition arrearage of $18,180.72. The Lopers filed an adversary complaint, seeking bifurcation of RECDS' claim into secured and unsecured portions. Appellants' Appendix at 1–10; Appellees' Supplemental

Appendix at 17. Once bifurcated, the amount of the secured portion of the claim could be "stripped down" to the fair market value of the property securing the mortgage, which the Lopers alleged to be $73,000.00. The Lopers also sought a redetermination of the amount in arrears, contending that substantially lower monthly payments were due under an "interest credit" program administered by RECDS.

Following discovery, RECDS and the Lopers filed cross-motions for summary judgment, reserving as an issue of fact a determination of the fair market value of the property securing the mortgage. RECDS challenged bifurcation of its claim, asserting that the mortgage debt was protected from modification because the claim is secured only by an interest in real property that is the debtor's principal residence.

At a hearing on the cross-motions for summary judgment, the Bankruptcy Judge ruled in the Lopers' favor and issued a Second Amended Order on July 23, 1996. That order allowed bifurcation of RECDS' claim into secured and unsecured portions, with the secured claim to equal the fair market value of the property and the unsecured claim equal to the amount of the debt in excess of that fair market value. The court also found in the Lopers' favor with respect to the amount in arrears. RECDS has appealed only the Judge's order that the claim be bifurcated.[1]

## II. *Discussion*

### A. *Jurisdiction*

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a)(1) which gives the Federal District Courts jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in "core proceedings" (cases and proceedings involving purely bankruptcy matters).

### B. *Standard of Appellate Review*

A bankruptcy judge's findings of fact may not be set aside unless clearly erroneous. Fed. R. Bankr.P. 8013. *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990); *In re Cassani*, 214 B.R. 459, 462 (D.Vt.1997). Questions of law are reviewed *de novo. Gravel and Shea v. Vt. National Bank*, 162 B.R. 961, 964 (D.Vt.1993) (citing *In re Manville Forest*, 896 F.2d at 1388).

### C. *Whether RECDS' lien on the Lopers' principal residence may be modified*

Section 506(a) of the Bankruptcy Code generally governs the disposition of secured claims of creditors against the bankrupt's estate, irrespective of whether the bankrupt has elected to proceed under Chapters 7, 11, 12 or 13.[2] Under that Section, the amount of a secured claim may be "stripped down" to the fair market value of the collateral as of the date of the bankruptcy filing. For example, this Section is frequently relied upon to "strip down" the amount of an automobile lien where the amount of the lien substantially exceeds the fair market value at the time of the bankruptcy filing. *See, e.g., In re Scheierl*, 176 B.R. 498 (Bankr.D.Minn.1995).

■ When a debtor may strip a secured creditor's claim to the fair market value of the collateral, the claim is "bifurcated" into secured and unsecured portions. The unsecured portion is equivalent to the amount by which the lien exceeds the fair market value of the collateral and the creditor is treated as an unsecured creditor with respect to that unsecured portion. 11 U.S.C. § 506(a).

---

**1.** RECDS has also asked this Court to remand this case for a revision of the Bankruptcy Judge's ruling that the mortgage lien is void to the extent that it does not secure an allowed secured claim. RECDS contends that no portion of the lien is voidable until the Lopers fully perform their Chapter 13 plan. The Court finds, however, that the Judge's ruling was in accordance with Section 506(d) of the Bankruptcy Code which states (with exceptions not applicable here) that the unsecured portion of a bifurcated lien is void. 11 U.S.C. § 506(d).

**2.** Section 506(a) provides that "[a]n allowed claim of a creditor secured by a lien on property in which the [bankrupt] estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ...and is an unsecured claim to the extent that the value of such creditor's interest...is less than the amount of such allowed claim." 11 U.S.C. § 506(a).

■ The ability of a debtor to strip a lien to fair market value may be significantly curtailed in the case of a lien on the debtor's principal residence. In Chapter 13 proceedings, Section 1322(b)(2) prohibits the strip-down of any residential lien which is secured only by real estate. A counterpart to § 1322(b)(2) was added to Chapter 11 in 1994 to prohibit similar strip-downs in Chapter 11 proceedings.[3]

■ In Chapter 13 proceedings, the debtor is allowed to adjust the amount and the timing of the repayment of his/her indebtedness to secured and unsecured creditors in a repayment plan. The repayment plan is subject, however, to confirmation by the Bankruptcy Court. Section 1322 identifies the components of a confirmable repayment plan under Chapter 13. To be confirmed, for example, the plan must provide that the debtor will turn over at least a portion of his/her future income to the bankruptcy trustee for a specified time period (not to exceed five years). 11 U.S.C. § 1322(a)(1). The plan must also provide that the bankruptcy trustee will supervise the debtor's repayment of secured and unsecured creditors over the specified time period. 11 U.S.C. § 1322(c).

Section 1322(b)(2) allows a Chapter 13 debtor to adjust the amounts due secured and unsecured creditors, "other than a claim secured only by a security interest in real property that is the debtor's principal residence,..." 11 U.S.C. § 1322(b)(2). Until the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), several of the Circuits (including the Second Circuit) had taken the position that this caveat provides protection only to the portion of a residential mortgage that is secured by the fair market value of the property. As a first step, Section 506(a) still permits the debtor to bifurcate the lien into secured and unsecured portions where the fair market value of the property is less than the amount of the lien. *See* Norton Bankruptcy Law and Practice 2d, § 121:5 at 121–45–46.

In *Nobelman*, the Supreme Court rejected this reasoning, holding that Section 1322(b)(2) protects the rights of a residential mortgagee to demand *full* repayment of its lien under a Chapter 13 repayment plan. The position espoused by the Circuits failed to take adequate account of the "rights" of the mortgagee. *Nobelman v. American Savings Bank*, 508 U.S. at 328, 113 S.Ct. 2106. The mortgagee's rights, which "are created and defined by state law," *(Id.)* (quoting *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)) include the right to repayment of principal and interest in monthly installments over a specified time period. A debtor cannot modify the payment and interest terms for the unsecured component without also modifying the terms of the secured component. Such "a significant modification" of a residential mortgagee's contractual rights is prohibited by Section 1322(b)(2) where "the lender's claim is secured only by a lien on the debtor's principal residence." *Id.* at 332, 113 S.Ct. 2106. Justice Stevens in a brief concurring opinion added that this favorable treatment of residential mortgagees is consistent with Congress' intent "to encourage the flow of capital into the home lending market." *Id.* The Court, however, did not reach the issue of whether Section 1322(b)(2) protects a residential mortgagee where the mortgage is secured by personal as well as real property.

A year after the *Nobelman* decision, Congress added Section 1123(b)(5) to Chapter 11 of the Bankruptcy Code to "conform the treatment of residential mortgages in chapter 11 to that in chapter 13." H.R. Report No. 835, 103rd Cong.2d Sess. 46 (1994). The House Report stated that the Section was not intended to apply "to any transaction in which the creditor acquired a lien on property other than real property used as the debtor's residence." *Id.* (citing *In re Hammond*, 27 F.3d 52 (3d Cir.1994) and *In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal.1986)).

Since the Supreme Court's decision in *Nobelman*, the courts have remained sharply divided over the issue which the *Nobelman*

---

**3.** *See Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) where the Supreme Court held that a Chapter 7 debtor could not use Section 506(d) to strip down an undersecured mortgage and void the unsecured portion of the mortgage holder's lien.

decision left undecided—the extent to which a residential mortgagee may rely upon an anti-modification provision where the mortgagee has taken a security interest in various fixtures and appliances as well as the debtor's house and land. *Cf., e.g., In re Hammond,* 27 F.3d 52 (3d Cir.1994) (holding that a lien created by a residential mortgage could be modified in view of language in the mortgage that created a security interest in personal property, such as appliances, used in or about the premises) with *In re Lee,* 215 B.R. 22 (9th Cir. BAP 1997) (holding that a lien created by a residential mortgage could not be modified although the deed of trust purported to take a security interest in various items, including appliances, used in or about the premises). As the Bankruptcy Court Judge noted, this issue has not been addressed by this Court (Appellants' Appendix at 532) or, for that matter, by other courts in this Circuit since the *Nobelman* decision (with the exception of the Connecticut Bankruptcy Court decision in *In re Halperin,* 170 B.R. 500 (Bankr.D.Conn.1994) which is distinguished below).

In *In re Hammond,* the Chapter 13 debtors had filed an adversary proceeding, as is the case here, seeking to limit the mortgagee's allowed secured claim to the fair market value of their residence. The Third Circuit affirmed the lower courts' rulings in favor of the debtors, holding that the lien could be bifurcated, since the mortgage had created a security interest in the debtors' personal property in addition to a lien on their principal residence. *In re Hammond,* 27 F.3d at 58.

The case was the Third Circuit's first opportunity to consider the applicability of Section 1322(b)(2) to a residential mortgage creating a lien on collateral used in or about a residence since the *Nobelman* decision. In two earlier decisions, *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir.1990) and *Sapos v. Provident Institution of Savings,* 967 F.2d 918 (3d Cir.1992), the Third Circuit had held that Section 1322(b)(2)'s anti-modification clause does not apply when the mortgage has created a lien on the debtor's personal property used in or about the residence. On appeal, the Circuit

found that the Supreme Court had not addressed that issue in *Nobelman* (although the Nobelman mortgage had also created a security interest in additional collateral). *Id.* at 56.

Where a residential mortgagee's claim is secured by "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises" in addition to a lien on the debtors' residence, Section 1322(b)(2) unambiguously allows modification. The Section "plainly states that a mortgagee who has an additional security interest gets no protection from the anti-modification clause of section 1322(b)(2), even though the additional security interest in personal property has no real value." *Id.*

More recently, in *In re Lee,* 215 B.R. 22 (9th Cir. BAP 1997), the Bankruptcy Appellate Panel of the Ninth Circuit reached the opposite conclusion in considering whether Section 1123(b)(5), the counterpart provision to Section 1322(b)(2) in Chapter 11, protects a residential mortgagee where the mortgagee has acquired an additional security interest in personal property. The Panel held that the deed of trust was secured only by the debtors' principal residence, notwithstanding language in the deed "purporting" to take a security interest in, *inter alia,* "antennas, pool equipment, window coverings, drapes and drapery rods, carpeting and floorcoverings, awnings, ranges, ovens, water heaters and attached cabinets." *Id.* at 25–26. The Panel found that the clause appended to this litany—"it being intended and agreed that such items be conclusively deemed to be affixed to and to be part of the real property that is conveyed hereby..."—demonstrated that this additional collateral "was, by agreement, made part of the real property securing the loan." *Id.* at 26. Alternatively, the Panel found that "the 'additional collateral' was of such insignificant value compared to the mortgage it was ostensibly securing, that it would be inequitable to allow the [d]ebtor to strip [the] mortgage." *Id.* at 27.

In the absence of an express ruling on this issue by the Second Circuit, this Court finds that the Ninth Circuit's analysis fails to take

three essential factors into account: (i) the plain meaning of Section 1322(b)(2); (ii) the applicability of state law; and (iii) the legislative history of Section 1123(b)(5), the counterpart of Section 1322(b)(2).

First, Section 1322(b)(2) provides that a Chapter 13 debtor may "modify the rights of holders of secured claims, other than a claim secured *only* by a security interest in real property that is the debtor's principal residence." (emphasis added) 11 U.S.C. § 1322(b)(2). This language is unambiguous. To provide protection from modification to a residential mortgagee with a claim secured by a security interest in personal as well as real property is to ignore the plain meaning of the statute. *See In re Hammond*, 27 F.3d at 57 ("The language of section 1322(b)(2) is unambiguous. The language of the bankruptcy judge bears repeating: If [the mortgagee] wishes otherwise, it should delete such language from its agreements." (quoting *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d at 129)).

Second, in *Nobelman*, the Supreme Court clearly admonishes lower courts to determine the extent of a mortgagee's rights under applicable state law, since those rights are not defined in the Bankruptcy Code. *Nobelman v. American Savings Bank*, 508 U.S. at 329, 113 S.Ct. 2106. The Ninth Circuit Panel accords great weight to language in the mortgage making any items listed a part of the real property securing the loan. However, the Panel does not address at any point in the opinion whether the itemized additional collateral would be considered personal property under California law.

Third, the legislative history of Section 1123(b)(5) which was added by the 1994 amendments to the Bankruptcy Code "to harmonize the treatment of home mortgage loans in chapter 11 and chapter 13 cases" clearly indicates that the new Section 1123(b)(5) is not intended to apply "to any transaction in which the creditor acquired a lien on property other than real property used as the debtor's residence." H.R. Report No. 835, 103rd Cong.2d Sess. 46 (1994). By citing the Third Circuit's decision in *In re Hammond* to support that statement, Congress obviously intended to endorse the Third Circuit's approach to interpreting Section 1123(b)(5)'s counterpart provision in Chapter 13. *See Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1, 6–7 (1st Cir.1996) (relying upon the House Report's citation of the *In re Ramirez* decision to hold that the antimodification provision in Section 1322(b)(2) does not apply to multi-unit houses where the security interest extends to rental units).

■ In the instant case, as in *In re Hammond* and *In re Lee*, the mortgage executed by the Lopers created a lien in "all improvements and personal property now or later attached [to the residence] or reasonably necessary to the use thereof, including, but limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds,..." Appellants' Appendix at 139. Whether these items constitute personal property or real estate is a question that must be decided under Vermont law. "In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.'" *Nobelman v. American Savings Bank*, 508 U.S. at 329, 113 S.Ct. 2106.

■ The Vermont Supreme Court has held that the determination of whether an article used in connection with real property is a fixture depends upon whether: (1) the article is "annexed" to the real estate; (2) an annexed article has been "adapted" to the real estate; and (3) whether the parties intended to make the article a part of the real estate. *Sherburne Corp. v. Town of Sherburne*, 124 Vt. 481, 484, 207 A.2d 125 (1965). RECDS concedes that when this test is applied to the articles in question, the articles would be considered personal property under Vermont law.

■ RECDS argues that although the articles enumerated in the Lopers' mortgage may be considered personal property, the agency still did not take a security interest in that property because it took none of the steps required to perfect a security interest in personal property under Vermont's Uni-

form Commercial Code. However, under 9A V.S.A. § 9–501(4), a mortgage deed can create a valid security interest in personal as well as real property.[4] A valid security agreement binds a debtor and creditor irrespective of whether the creditor has filed the agreement to perfect the security interest under the Code. *In re Chase*, 37 B.R. 345, 347 (Bankr.D.Vt.1983). This Court finds, therefore, that under Vermont law, RECDS' mortgage represents a security interest in the Lopers' personal property as well as the real property that is the Lopers' residence.

RECDS has asked the Court, however, to disregard Vermont law in considering whether RECDS took a security interest in personal property and to apply instead a federal standard endorsed by the Bankruptcy Appellate Panels in the 1st Circuit in *In re Marenaro*, 217 B.R. 358 (1st Cir. BAP 1998) and in the 9th Circuit in *In re Lee*, 215 B.R. 22 (9th Cir. BAP 1997). Under this analysis, a residential mortgagee's lien on additional collateral may still be considered a claim "secured only by a lien on the debtor's principal residence" if the collateral is nothing more than an enhancement of the real property or is of little or no independent value. *In re French*, 174 B.R. 1, 7 (Bankr.D.Mass.1994)("This Court believes that the test should be whether or not the 'additional collateral'...is nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property or is of little or no independent value.")

This Court is aware of the fact that several courts have applied this *In re French* analysis to deny a debtor's bifurcation claim. *See, e.g., In re Marenaro*, 217 B.R. at 360 (finding boilerplate "add-on" of additional collateral "in mineral rights, profits, and the like... to be no more than an enhancement within the French rule"); *In re Lee*, 215 B.R. at 26 (remarking upon the relative value of the fixtures compared to the value of the dwelling and land securing the mortgage lien); *In Re Rolle*, 218 B.R. 636 (Bankr.S.D.Fla.1998)(noting the debtors' failure to introduce any evidence assigning an

independent value to fixtures subject to the mortgage lien).

▇ This Court finds, however, that the issue of whether a residential mortgagee's claim may be bifurcated turns on the *nature* of the property securing the claim, not on the value of that property. *In re Hammond*, 27 F.3d 52 (3d Cir.1994); *In re Pinto*, 191 B.R. 610 (Bankr.D.N.J.1996) (holding that where a mortgage was not secured solely by the debtor's principal residence, but also by additional collateral such as described in the instant case, the claim could be bifurcated); *In re Escue*, 184 B.R. 287 (Bankr.M.D.Tenn.1995)(holding that where a deed of trust was not secured solely by a security interest in the debtor's principal residence, but also by additional collateral such as described in the instant case, the claim could be bifurcated).

And, as discussed above, the nature of the property is determined by reference to relevant state law decisions. *See In re Rolle*, 218 B.R. 636, 640–41 (Bankr.S.D.Fla.1998)(applying Florida statutory and case law to determine whether fixtures should be considered real property and whether the mortgagee's security interest in those fixtures had been properly perfected). *See also In re Halperin*, 170 B.R. 500, 502 (Bankr.D.Conn.1994)(affirming its pre-*Nobelman* decision in *In re Spano*, 161 B.R. 880, 884–90 (Bankr.D.Conn.1993) which applied Connecticut law to determine whether the additional collateral related to particular real property). *Cf. In re French*, 174 B.R. at 6 ("This Court is not inclined to confine its holding by reliance on definitions of real property under applicable state law.")

The Court also notes that, in contrast to facts described in several of the decisions relying upon a valuation rationale to reject a debtor's bifurcation claim, in the instant case, the Lopers have offered evidence with respect to the value of the various fixtures that were included in the mortgage lien (with the exception of the clothes washer and dryer

---

**4.** *Cf. In re Lee,* 215 B.R. at 26, n. 5, where the Ninth Circuit Bankruptcy Review Panel noted, without consideration of applicable provisions of the California Uniform Commercial Code, that

the mortgagee's failure to file the deed of trust as a financing statement meant that the security interest in the mortgagors' personal property remained unperfected.

that were on the premises when the mortgage was reamortized in 1993).

■■■■ RECDS urges this Court to reverse the Bankruptcy Court's order as inconsistent with the legislative intent of Section 1322(b)(2) to protect mortgagees who have taken an interest only in real estate. Section 1322(b)(2) was enacted as part of the Bankruptcy Code of 1978. "It appears from the legislative history … that Congress intended to strike a balance between its expressed policy of making repayment plans more attractive to debtors and its concern that home mortgage funds remain accessible to prospective homeowners. Thus, the language of § 1322(b)(2) is narrowly drafted to protect principal mortgage lenders and yet avoid extending the protection to holders of secured claims which are based on extraneous consumer purchases." *PNC Mortgage Company v. Dicks*, 199 B.R. 674 (N.D.Ind.1996). *See also In re Rolle*, 218 B.R. 636, 641 (Bankr.S.D.Fla.1998) ("[The] 'secured-only' clause was intended by Congress to extend anti-modification protection to home lenders as opposed to other types of creditors who take security interests in personal residences to secure debt unrelated to the purchase of the residence, such as debt incurred for extraneous consumer purchases that also serve as security.")

■■■■ This Court agrees that the legislative history of Section 1322(b)(2) clearly indicates that Congress intended to confine relief from bifurcation only to residential mortgagees who have extended credit to the debtors to enable them to purchase their primary residence or to make improvements on that residence —— not to finance wholly unrelated consumer purchases. However, we do not concur that Congress intended to make relief from bifurcation available to *any* residential mortgagee who extended credit to the debtors to enable them to purchase or make improvements upon their primary residence.

■■■■ The legislative history of Section 1123(b)(5) added to the Bankruptcy Code by the 1994 amendments clearly indicates that Congress did not intend to make bifurcation relief available to the holder of a mortgage interest in additional collateral that cannot be considered real property. By citing the Third Circuit's decision in *In re Hammond*, Congress signalled its concurrence with the Third Circuit's view that bifurcation protection does not extend to the holder of a residential mortgage that has given the mortgagee a lien on personal property "used in or about the residence." *Id.* at 57. In a case such as this, where the mortgagee concedes that the mortgage creates a lien on personal property under applicable state law, protection from bifurcation is not available. *Cf. In re Halperin*, 170 B.R. 500, 502 (Bankr.D.Conn.1994)(holding that it is inconsistent with the legislative intent of Section 1322(b)(2) to allow "boilerplate language" to modify a residential mortgagee's rights but not taking into consideration the 1994 amendments to the Bankruptcy Code which were enacted after the issuance of the Bankruptcy Court's opinion).

### III. *Conclusion*

The Second Amended Order that was entered by the Bankruptcy Court on July 19, 1996 is affirmed. This Court finds that the Bankruptcy Court was correct in finding that the antimodification clause found in 11 U.S.C. § 1322(b)(2) is unavailable to the Appellants, because the mortgage created a security interest not only in the real property that is the Appellees' primary residence, but also in personal property used in or about the residence. This Court further finds that the Bankruptcy Court was correct in ordering the bifurcation of the Appellants' claim into secured and unsecured components pursuant to Section 506(a), the allowed amount of the secured component being equivalent to the fair market value of the real and personal property secured by the mortgage at the time that the Appellees filed their Chapter 13 Petition and the allowed amount of the unsecured component being equivalent to the amount by which the lien exceeds the fair market value of the real and personal property at the time of filing.

The case is remanded to the Bankruptcy Court for further proceedings related to consideration of the Appellees' proposed Chapter 13 Plan, including a further evidentiary hearing with respect to the valuation of the

real and personal property subject to the
Appellants' lien.